UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-cv-00013-LLK

JAMES B. OWEN, Jr.                                                                                              PLAINTIFF

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security                               DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The fact and law summaries of Plaintiff and the Commissioner are at Doc. 16 and Doc. 22. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 14].

Plaintiff suffers from lymphedema (a type of swelling) of the right upper extremity. [Administrative Record, Doc. 13 at 18]. The Administrative Law Jude (ALJ) recognized the presence of lymphedema as a medically determinable impairment but found (explicitly) that it does not constitute a severe, or vocationally significant, impairment. *Id.*

Plaintiff makes two arguments: 1) The ALJ's finding of non-severe lymphedema is not supported by substantial evidence; and 2) The ALJ's not labeling Plaintiff's post-traumatic stress disorder (PTSD) as "severe" was reversible error. [Doc. 16]. Because the first argument is persuasive, this Opinion will REMAND the matter to the Commissioner for a new decision.

**The ALJ's decision**

The ALJ denied Plaintiff's disability claim, finding that he has not been under a disability, as defined in the Social Security Act, from April 30, 2015, when he alleges he became disabled, through November 7, 2019, when the ALJ issued her decision. [Doc. 13 at 24-25].

In concluding that Plaintiff is not disabled, the ALJ followed the 5-step sequential evaluation process, which applies in all Social Security disability cases. First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 30, 2015, when he alleges that he became disabled. [Doc. 13 at 17]. Second, the ALJ found that Plaintiff suffers from the following severe, or vocationally significant, impairments: degenerative disc disease status-post surgeries, depression, and anxiety. *Id.* at 18. Third, the ALJ found that Plaintiff's impairments do not satisfy the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.*

As in any case that advances beyond Step 3, the ALJ determined Plaintiff residual functional capacity (RFC). The ALJ found that, notwithstanding his degenerative disc disease status-post surgeries, Plaintiff can perform "light work as defined in 20 CFR 416.967(b) except … never climb ladders, ropes or scaffolds … no exposure to hazards including unprotected heights and operating dangerous moving machinery … may occasionally reach overhead bilaterally." [Doc. 13 at 20]. The ALJ found that, notwithstanding his depression and anxiety, Plaintiff "can understand, remember, and carry out simple and detailed instructions … can interact as needed with supervisors and coworkers … cannot interact with the public for task completion … may not perform work requiring a strict production quota or assembly line pacing … is capable of maintaining attention and concentration for two-hour segments within an eight-hour workday, as well as tolerating routine changes." *Id.*

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. [Doc. 13 at 23]. Fifth, the ALJ found that Plaintiff retains the ability to perform a significant number of unskilled, light jobs in the national economy such as checker, merchandise marker, routing clerk. *Id.* at 24.

### Plaintiff's right upper extremity lymphedema

In or around January 2015, Plaintiff was diagnosed with Stage 3 melanoma. [Doc. 13 at 49]. The melanoma, which was on Plaintiff's back, was removed, along with lymph nodes under his right axillary (armpit) region. *Id.* at 49-50. After the cancer spread, "they removed all lymph nodes from the right side,

which has in itself caused limitations." *Id.* at 50.  Plaintiff attempted to return to work but his right arm, from the "forearm down, all the way down to my rib section," started to "swell incredibly bad … I looked like I had been stung by a hornet's nest." *Id.*  The oncologist diagnosed right arm lymphedema, a type of edema (swelling) in which "even small movements and manipulation can cause swelling."  *Id.* at 50-51.

Plaintiff has in his home a special compression sleeve with a hydraulic pump "to move the fluid away from my arm."  [Doc. 13 at 51].  The pump "starts at the fingertips and squeezes all the way up the arm and goes across the chest.  … [a]nd it even has a waist because lymph nodes go all the way down you your waist."  *Id.* at 57.  During a pumping session, Plaintiff is unable to walk/stand or manipulate objects with the right arm.  *Id.* at 52.  A pumping session lasts ninety (90) minutes, and Plaintiff has a session "every single day," twice a day, "once in the morning when I get up and then once at night."  *Id.*  Without the sessions, Plaintiff's right arm would swell up and look like "the Michelin Man arm."  *Id.* at 51.

During the day, after the customary morning session, Plaintiff's right arm would likely swell again with any significant use, e.g., doing dishes, laundry, even "hanging out with my son playing Play-Doh with my son the other day made it swell."  [Doc. 13 at 53].  Plaintiff's physicians tell him that the lymphedema is "going to be a life-long battle."  *Id.*

**The ALJ's finding of non-severe lymphedema is not supported by substantial evidence.**

The ALJ found Plaintiff's lymphedema to be non-severe because:  1) Plaintiff stopped attending treatment for this condition; and 2) There is a lack of documentation supporting Plaintiff's testimony of frequent pump use:

> The undersigned finds the claimant's obesity and lymphedema to be non-severe. The claimant's doctors have not noted that his obesity impacts his functionality. Additionally, the State agency consultants also found the claimant obesity non-severe (Exhibit B1A, B3A). As for the claimant's lymphedema, the record indicates that the onset of this impairment was January 2019. However, [1] he stopped attending his treatment in March 2019 and was discharged from care due to the missed appointments in April 2019 (Exhibit B34F/4). While he testified that he uses a compression pump frequently to treat this condition, [2] there is no documentation to support the alleged frequency of use. The undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity.

[Doc. 13 at 18].

Plaintiff argues that neither the above findings nor any substantial evidence in the administrative record supports the ALJ's finding of non-severe lymphedema. [Doc. 16 at PageID.1331-36]. For the reasons below, the argument is persuasive.

The ALJ was required, at Step 2 of the sequential evaluation process, to identify Plaintiff's severe, or vocationally significant, impairments. 20 C.F.R. § 404.1520(a)(4)(ii). Step 2 is a "de minimis hurdle," intended only to "screen out totally groundless claims." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009). Thus, if Plaintiff's lymphedema had "more than a minimal effect" on his ability to do basic work activities, the ALJ was required to treat it as "severe" and consider its impact on his ability to work, at subsequent steps of the evaluation process. *Id.* Associated with Step 2 is the requirement that the severe impairment satisfy the so-called duration requirement, i.e., it "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Plaintiff testified that his doctors tell him that his lymphedema is "going to be a life-long battle." [Doc. 13 at 53]. Therefore, due to the nature of Plaintiff's impairment and symptoms, this Opinion concludes that Plaintiff satisfied his de minimis burden of showing that his lymphedema satisfies the duration requirement.

As noted above, the ALJ identifies two reasons for finding Plaintiff's lymphedema to be non-severe. The first was that Plaintiff stopped attending some lymphedema therapy sessions. [Doc. 13 at 18]. For two reasons, this was not a substantial reason for finding Plaintiff's lymphedema to be non-severe. First, regardless of whether Plaintiff pre-terminated some lymphedema therapy sessions, the lymphedema (itself) was "going to be a life-long battle." *Id.* at 53. Second, Plaintiff quit the sessions after he got his own pump for home use, which "does exactly what the therapist does." *Id.* at 71.

4

The second reason the ALJ gave for finding Plaintiff's lymphedema to be non-severe was a lack of documentation supporting Plaintiff's testimony of frequent pump use. [Doc. 13 at 18]. Plaintiff did not testify to frequent pump use during the day (i.e., what would be Plaintiff's workday). He testified that he does a 90-minute pump session "every single day," twice a day, "once in the morning when I get up and then once at night." *Id.* at 52. The Commissioner reasonably characterizes this schedule as "fall[ing] outside [what would be] the workday." [Doc. 22 at PageID.1361]. However, Plaintiff testified that, (even) after a morning session (during Plaintiff's "workday"), his right arm swells with any significant use, e.g., doing dishes, laundry, or even "hanging out with my son playing Play-Doh with my son the other day made it swell." [Doc. 13 at 53].

>Plaintiff testified that he avoids using his right arm during the day to avoid swelling:
>
>**ALJ:** After you use the pump, how long before your hand might start to swell again?
>
>**Plaintiff:** It depends on how much work I do, how much use I get out of the right arm.
>
>**ALJ:** What activities, what examples of things would cause swelling?
>
>**Plaintiff:** Doing dishes, doing laundry. I try to, you know, hanging out with my son playing Play-Doh with my son the other day made it swell.
>…
>**ALJ:** Can you reach overhead with the right arm?
>
>**Plaintiff:** [N]ot very easily. [T]he right arm … when it's full of so much fluid, it feels like it weighs an additional 20 pounds when I'm trying to lift it.
>…
>**ALJ:** [I]f you're sitting at a table and something were on the table height, is there a time limit to how long you can keep the right arm out in front?
>
>**Plaintiff:** Like doing laundry, something like that, no more than five/ten minutes.
>
>**ALJ:** Does any position cause the fluid to drain back out of your arm?
>
>**Plaintiff:** Not really. The only thing that I found that drains the fluid properly is using the automatic pump.

*Id.* at 53, 56-57. In a work-like setting (including the light work the ALJ found Plaintiff can perform), Plaintiff would not be at liberty to avoid using his right arm to avoid swelling. Therefore, lack of

5

documentation of frequent pump use was not a substantial reason for discounting the existence of severe, or vocationally significant, lymphedema.

Nevertheless, not labeling an impairment as "severe" at Step 2 is considered harmless error if the ALJ's decision reflects consideration, at subsequent steps, of the combined effects of all severe and non-severe impairments on ability to work. *Jamison v. Comm'r*, No. 1:07CV152, 2008 WL 2795740, at *8 (S.D. Ohio July 18, 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

In this case, the ALJ found (at subsequent steps) that, notwithstanding his lymphedema, Plaintiff retains the ability to perform light work. [Doc. 13 at 20]. Light work requires significant exertional abilities, including standing/walking 6 hours per 8-hour workday (with sitting during the remaining 2 hours), lifting up to 20 pounds at a time, and frequent lifting/carrying of objects weighing up to 10 pounds. Social Security Ruling (SSR) 83-10, 1983 WL 31251, at *5. Additionally, the ALJ found that Plaintiff can "occasionally reach overhead bilaterally." [Doc. 13 at 20].

The ALJ's decision provides no indication of how Plaintiff's lymphedema can be expected to have only a minimal effect on his abilities to lift 20 pounds at a time, lift/carry objects weighing up to 10 pounds frequently, and reach overhead occasionally. Therefore, the ALJ's decision does not reflect consideration of the combined effects of Plaintiff's allegedly non-severe lymphedema and admittedly severe impairments on his ability to work. It follows that the ALJ's finding of non-severe lymphedema was not harmless error.

**The ALJ's not labeling Plaintiff's PTSD as "severe" was, at worst, harmless error.**

As stated above, the ALJ found that, notwithstanding his severe, or vocationally significant, depression and anxiety, Plaintiff "can understand, remember, and carry out simple and detailed instructions … can interact as needed with supervisors and coworkers … cannot interact with the public for task completion … may not perform work requiring a strict production quota or assembly line pacing … is capable of maintaining attention and concentration for two-hour segments within an eight-hour

workday, as well as tolerating routine changes." [Doc. 13 at 18]. Plaintiff argues that the ALJ's not labeling Plaintiff's post-traumatic stress disorder (PTSD) as "severe" was reversible error. [Doc. 16 at PageID.1335].

As stated above, not labeling an impairment as "severe" at Step 2 is considered harmless error if the ALJ's decision reflects consideration, at subsequent steps, of the combined effects of all severe and non-severe impairments on ability to work. *Jamison v. Comm'r*, No. 1:07CV152, 2008 WL 2795740, at *8 (S.D. Ohio July 18, 2008) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Additionally, "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result." *Kornecky v. Comm'r*, 167 F. App'x 496, 507 (6th Cir. 2006).

In this case, the ALJ considered (indirectly or implicitly) Plaintiff's PTSD when he considered Plaintiff's "symptoms including anxiety, depression, irritability, crying spells, insomnia, and difficulty concentrating (See e.g., Exhibit B31F/11) … [and] [t]he record indicates that he has been treated by a psychiatrist and a therapist for his symptoms (Exhibit B13F/4)." [Doc. 13 at 21]. Additionally, any error was harmless as there is no evidence that Plaintiff's PTSD results in greater mental RFC restriction than the ALJ found (based on Plaintiff's depression and anxiety).

### Order

Because the Administrative Law Judge's (ALJ's) finding of non-severe lymphedema is not supported by substantial evidence, the Court hereby REMANDS this matter to the Commissioner for a new decision and any further administrative proceedings deemed necessary and appropriate by the Commissioner.

March 9, 2022

Lanny King, Magistrate Judge
United States District Court